UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Christopher C.,

    Plaintiff,

    v.                            Civil Action No. 2:19–cv–214–jmc

Commissioner of Social Security,

    Defendant.

## OPINION AND ORDER
(Docs. 13, 14)

Plaintiff Christopher C. brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting review and remand of the second decision of the Commissioner of Social Security denying his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI).  Pending before the Court are Plaintiff's motion to reverse the Commissioner's decision (Doc. 13), and the Commissioner's motion to affirm the same (Doc. 14).  For the reasons stated below, Plaintiff's motion is granted; the Commissioner's motion is denied; and the claim is remanded solely for calculation of benefits.

## Background

Plaintiff was 32 years old on his alleged disability onset date of September 10, 2011.  He has a high school education, and has worked as an assembler of small products, a hand packer, and a production machine tenderer.  He is single, and he lived with his sister and her husband during the alleged disability period.

Plaintiff suffers from chronic pain, obesity, depression, and anxiety.  He has had multiple surgeries in an attempt to address his back, shoulder, hand, and other pain, which occurs mostly on the right side of his body.  In March 2016, Plaintiff testified that he is unable to work because "[e]verything" he does, including walking, standing, and sitting, causes him pain.  (AR 82.)  He stated that he spends 90% of his days in bed, explaining that, despite undergoing surgery, injections, massage therapy, pool therapy, and stretch therapy, his pain is severe and chronic, preventing him from doing anything for 20 minutes or more.  (*Id.*; *see* AR 90–91.) Plaintiff testified that he cannot lift his hand up; he has right shoulder pain; he cannot lift much weight with his right arm; he cannot reach his right arm above his elbow; he has headaches caused by tension spasm; he can do activities for only 10 minutes at a time before needing to rest for approximately 60 minutes; and if he were to engage in any activity for 60 minutes, he would need to rest for the next 36 hours.  (AR 85–86, 93.)

In February 2019, Plaintiff testified that he can sit for 30 minutes or an hour, "[i]nconsistently," but after that, he becomes "fidgety" and experiences a feeling of "more and more pressure," requiring him to stand up and stretch for five to ten minutes.  (AR 1595.)  He stated that if he sits for too long, he "gets to the point where [he is] basically . . . crying."  (*Id.*)  Plaintiff further testified that he has pain when he walks, such that he is able to walk for only about 30–45 minutes at a time. (AR 1596.)  He stated that, given his pain issues, he spends about 85–90% of his days lying down with pillows propped up on his shoulder.  (AR 1597.)  Although he

is unable to reach his right arm over his head, out to the side, or in front of him for any extended period, and he can lift only up to five pounds; he is able to cook microwaveable meals for himself, do laundry in separate loads throughout the day, and vacuum around his bed with a handheld vacuum.  (AR 1598–99, 1600–03.) Plaintiff described his pain as feeling like the upper half of his body is "crushing" his lower back.  (AR 1603.)  He also testified that after he holds a writing utensil for five to ten minutes, his hand "swells up" such that he is unable to draw a straight line or hold the utensil any longer.  (AR 1604.)

In June 2019, Plaintiff testified that his depression causes him to "[b]reak down and cry" on a daily basis (AR 1636), particularly when he has a "really bad pain" (AR 1637); and that he has difficulty focusing because of the pain he has in his shoulder, arm, back, and leg (AR 1642).  Plaintiff stated that, on a typical day, he lies in his room "quite a bit," sleeps for 45 to 60 minutes about five or six different times throughout the day, exercises three times each day in 15-minute increments, and leaves the house almost exclusively for doctor appointments.  (AR 1637–38.)  He explained that he is uncomfortable all day, and that he goes out with friends only "[a] couple times a year" because of his pain issues.  (AR 1637, 1640–41.)

Plaintiff filed his applications for SSI and DIB in February 2014, alleging that he has been unable to work since September 30, 2011, due to right shoulder problems, heart conditions, lumbar spine pain, back surgery, multiple hand surgeries, esophagus tears, and attention deficit disorder.[1]  (AR 269–80, 344.)

---

[1] Prior to filing these applications, Plaintiff applied for disability benefits in October 2012, alleging a disability onset date of February 16, 2008.  (AR 107, 119.)  That application was denied

Approximately five months later, in July 2014, Plaintiff added that he is unable to work due to feeling "depressed, forgetful[,] and frustrated"; and that he has foot and knee pain on the right side. (AR 374.) Plaintiff's applications were denied initially and upon reconsideration, and he timely requested an administrative hearing. On March 22, 2016, Administrative Law Judge (ALJ) Matthew Levin conducted the first hearing on Plaintiff's disability claim. (AR 70–106.) On April 21, 2016, the ALJ issued a decision finding that Plaintiff was not disabled under the Social Security Act from his alleged disability onset date through the date of the decision. (AR 23–38.) Plaintiff appealed the decision to the Appeals Council and then the Court; and in February 2018, the Court granted the Commissioner's assented-to motion for remand, returning the case to the Commissioner for further proceedings and a new decision. (AR 1684–87.)

On remand, ALJ Levin held two more administrative hearings, the first on February 8, 2019 (AR 1591–1632), and the second on June 18, 2019 (AR 1633–57). Dr. Louis Fuchs, an orthopedic surgeon, testified as a medical expert at the February hearing; and Dr. James Claiborn, a psychologist, testified as a medical expert at the June hearing. On August 9, 2019, the ALJ issued his second decision, again finding that Plaintiff was not disabled from his alleged disability onset date through the date of the decision. (AR 1559–81.) Plaintiff elected to forego filing exceptions with the Appeals Council (AR 1548), and instead filed the Complaint in this action on November 22, 2019 (Doc. 3).

---

and not appealed. (AR 206.)

## ALJ Decision

The Commissioner uses a five-step sequential process to evaluate disability claims.  *See Butts v. Barnhart*, 388 F.3d 377, 380–81 (2d Cir. 2004).  The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment."  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the ALJ finds that the claimant has a severe impairment, the third step requires the ALJ to make a determination as to whether that impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings").  20 C.F.R. §§ 404.1520(d), 416.920(d).  The claimant is presumptively disabled if his or her impairment meets or equals a listed impairment.  *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the ALJ is required to determine the claimant's residual functional capacity (RFC), which means the most the claimant can still do despite his or her mental and physical limitations based on all the relevant medical and other evidence in the record.  20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1).  The fourth step requires the ALJ to consider whether the claimant's RFC precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  Finally, at the fifth step, the ALJ determines whether the claimant can do "any other work."  20 C.F.R. §§ 404.1520(g), 416.920(g).  The claimant bears the burden of proving his or her case at

steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's [RFC]").

Employing this sequential analysis, in his August 2019 decision, ALJ Levin first determined that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date of September 30, 2011. (AR 1562.) At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease, obesity, right shoulder osteoarthritis, right carpal tunnel syndrome, depression, anxiety, and somatoform disorder. (*Id.*) Conversely, the ALJ found that Plaintiff's gastroesophageal reflux disease; headaches; hypertension; degenerative joint disease of the right hip, knee, and left shoulder; and remote injury to the left hand, were non-severe impairments. (*Id.*) At step three, the ALJ determined that none of Plaintiff's impairments, alone or in combination, met or medically equaled a listed impairment. (AR 1564–67.)

Next, the ALJ determined that Plaintiff had the RFC to perform "light work," as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b), with the following qualifications:

> [Plaintiff's RFC] allow[s] for standing and walking two hours at a time for a total of eight hours a day; sitting for two hours at a time for a total of eight hours; occasional climbing ramps and stairs, balancing, stooping, kneeling, and crouching; no crawling; no climbing ladders, ropes, and scaffolds; occasional overhead reaching with the right upper extremity; frequent forward and lateral reaching with the right upper

6

extremity; occasional exposure to unprotected heights, humidity, and temperature extremes; and no exposure to vibrations. [Plaintiff] must avoid social interaction with the public; however, he is capable of sustaining routine social interaction with coworkers and supervisors. He is capable of sustaining attention and concentration for two-hour increments in an eight-hour workday and 40-hour workweek; and he can adapt to occasional changes in the work setting.

(AR 1567.)  Given this RFC, the ALJ found that Plaintiff was unable to perform his past relevant work as a Telephone Repairer.  (AR 1579.)  Based on testimony from the VE, however, the ALJ determined that Plaintiff could perform other jobs existing in significant numbers in the national economy, including the "light" exertion representative occupations of Housekeeper, Price Marker, and Bench Assembler.  (AR 1579–80.)  The ALJ concluded that Plaintiff had not been under a disability from his alleged disability onset date of September 30, 2011 through the date of the decision.  (AR 1580.)

## Standard of Review

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A person will be found disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

In considering the Commissioner's disability decision, the court "review[s] the administrative record *de novo* to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g). The court's factual review of the Commissioner's decision is thus limited to determining whether "substantial evidence" exists in the record to support such decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *see Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder."). "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Poupore*, 566 F.3d at 305. In its deliberations, the court should bear in mind that the Social Security Act is "a remedial statute to be broadly construed and liberally applied." *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981).

## Analysis

Plaintiff contends the ALJ erred in finding that Plaintiff's concentration, persistence, and pace (CPP) is not significantly impaired due to a chronic pain condition and mental impairments. (Doc. 13.) According to Plaintiff, given this error—and the substantial evidence showing that Plaintiff's pain and mental impairments would cause him to be off task or miss work to such an extent that he

could not maintain a job—the claim should be remanded solely for calculation of benefits.  (*Id.*)  In response, the Commissioner asserts that the ALJ appropriately relied on Plaintiff's mental status examinations, conservative treatment, and daily activities, as well as on the opinions of the nonexamining agency consultants and medical experts, to support his CPP findings.  (Doc. 14.)  Moreover, the Commissioner argues that the ALJ's decision is legally sound and supported by substantial evidence, and thus should be affirmed.

## I.    The ALJ erred in his evaluation of the medical opinions, and thus in his finding that Plaintiff has the RFC to sustain CPP for two-hour increments in an eight-hour workday and 40-hour workweek.

Plaintiff contends the ALJ should have given less weight to the opinion testimony of nonexamining medical expert Dr. Louis Fuchs, particularly with respect to Plaintiff's CPP limitations, given that "overwhelming evidence from other sources" demonstrates that Plaintiff has disabling pain as a result of his physical and psychological impairments.  (Doc. 13 at 4.)  In relevant part, Dr. Fuchs, an orthopedic surgeon, testified as follows at the February 2019 hearing:

- "I think throughout [Plaintiff's] presentation[,] . . . it's just unphysiologic, and I have strong doubts about [his] veracity."  (AR 1611.)

- "[De]sp[i]te [Plaintiff's] complaints of pain and discomfort[,] I don't find much . . . in this record to substantiate that."  (AR 1612.)

- "[T]he presence of pain behavior [is noted in the record], so there's some question about the veracity of [Plaintiff]."  (AR 1616.)

- "[T]here are multiple notations of pain behavior, but one has to view with skepticism the complaints of pain by [Plaintiff]." (AR 1618.)

- "[Plaintiff] is totally deconditioned. I don't believe he's very stoic and there are multiple notations of pain behavior, so . . . I may base my conclusion on those findings. I think he is capable of doing more than he says he is capable of." (AR 1621.)

- Given the degree of pain Plaintiff alleges he is in and the amount of medication he takes, it is "[n]ot necessarily" true that he would be off task for at least 10% of the day. Considering just the amount of medication Plaintiff takes, "[i]t is within the realm of possibility" that he would be off task for at least 10% of the day, although "[n]ot everyone would be." (AR 1629.)

- "[Plaintiff] is not very stoic. He's on lots of medications and they may affect his function. How much? I don't know." (*Id.*)

- When a doctor writes "pain behavior" in a treatment record, that means "there is little physiologic basis [for] the complaints of pain. It is an exaggeration of the pain." Doctors determine this by the patient's motions and description of the pain, and the results of the examination. (AR 1630.)

In sum, much of Dr. Fuchs's testimony relates to the credibility of Plaintiff's pain complaints, with Dr. Fuchs opining that Plaintiff is a malingerer, meaning he exaggerates and is dishonest about the severity and limiting effects of his pain. Accordingly, Dr. Fuchs testified that, in assigning limitations to Plaintiff, he considered only "the objective neurologic and orthopedic examinations [and]

10

physical exams," and *he did not consider Plaintiff's pain and the potential resulting distractibility, fatigue, anxiety, and depression.* (AR 1628.)

The ALJ "adopted" and gave "great weight" to Dr. Fuchs's testimonial opinions, including the opinion that Plaintiff is a malingerer,[2] finding them to be "persuasive" and "supported by the objective evidence." (AR 1574.) The Court finds this valuation of Dr. Fuchs's opinions improper, as the premise behind the opinions—that Plaintiff exaggerates the severity and limiting effects of his pain, and that only the objective physical examination findings should be taken into account in assessing Plaintiff's limitations—are unsupported and inconsistent with the record as a whole. *See* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) ("The more a medical source presents relevant evidence to support an opinion, . . . the more weight we will give that opinion."); *id.* §§ 404.1527(c)(4), 416.927(c)(4) ("[T]he more

---

[2] The Commissioner does not adequately address either Dr. Fuchs's repeated testimony about Plaintiff being a malingerer or the ALJ's adoption of that testimony in his decision; and instead claims the ALJ did not rely on Dr. Fuchs's opinions to support his findings about Plaintiff's CPP abilities, but rather, gave great weight to Dr. Fuchs's opinions only in the context of Plaintiff's physical RFC. (*See* Doc. 14 at 5.) According to the Commissioner, the ALJ's finding that Plaintiff had only a moderate CPP limitation, and thus retained the RFC to concentrate for two hours at a time, was independent of the ALJ's assessment of Dr. Fuchs's opinions. (*Id.*) The record does not support this claim. The ALJ explicitly stated in his decision: "[Dr. Fuchs's] opinion is supported by the objective evidence. *This includes his testimony regarding 'pain behavior' as well as his cites to the record showing that [Plaintiff's] pain complaints are not substantiated.*" (AR 1574 (emphasis added).) Earlier in his decision, the ALJ described in detail Dr. Fuchs's testimony that Plaintiff is "not 'stoic' with regards to his pain" and that Plaintiff "is capable of more physical abilities than he demonstrates during examinations." (*Id.*) And later in his decision, as a rationale for affording "little weight" to the opinions of Plaintiff's treating primary care physician, the ALJ stated: "Dr. Fuchs testified that there is no objective evidence to support being off task [for] 20 percent [of the time] due to pain." (AR 1575.) Similarly, the ALJ's decision indicates that the ALJ "d[id] not find . . . persuasive" the statement of Plaintiff's treating neurologist that Plaintiff was not exaggerating his pain, because: "[a]s Dr. Fuchs testified, the term 'pain behavior' suggests pain exaggeration and there was no physiological basis for [Plaintiff's] reported pain." (AR 1576.) Clearly, the ALJ relied on Dr. Fuchs's opinion that Plaintiff is a malingerer in assessing Plaintiff's CPP limitations.

consistent an opinion is with the record as a whole, the more weight we will give to that opinion.").[3]

In explaining his opinion that Plaintiff is a malingerer, Dr. Fuchs testified that when a treating provider refers to "pain behavior" in a treatment note, the provider is referring to "an exaggeration of the pain," meaning "there is little physiologic basis [for] the complaints of pain." (AR 1630.) The ALJ specifically discussed, and apparently adopted, this testimony in his decision, stating: "[Dr. Fuchs] said that 'pain behavior' is an exaggeration of pain, with little physiological evidence to support such behavior." (AR 1574.) The ALJ cited no source other than Dr. Fuchs's testimony in support of this definition of "pain behavior," and the record does not reflect its application here. Rather, it appears more likely that when Plaintiff's treating providers referenced Plaintiff's "pain behavior," they were merely referencing Plaintiff's physical behavior that indicated he was in pain (like grimacing, limping, or flinching), which does not necessarily imply any exaggeration or malingering. For example, Dr. Fuchs, and in turn the ALJ, assumed that treating neurologist Dr. Andres Roomet's notation in a June 2017 treatment note that Plaintiff showed a lot of "pain behavior," meant that Plaintiff was exaggerating

---

[3] This Opinion and Order applies the regulations that were in effect at the time Plaintiff filed his applications in February 2014, though the regulations have since been revised. *See Revised Medical Criteria for Evaluating Mental Disorder*s, 81 Fed. Reg. 66138-01, 66178, 2016 WL 5341732 n.1 (Sept. 26, 2016) ("We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions."); *see also Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017) ("The revisions include redefining several key terms related to evidence, revising our rules about acceptable medical sources . . . , revising how we consider and articulate our consideration of medical opinions and prior administrative medical findings, revising our rules about medical consultants . . . and psychological consultants . . . , revising our rules about treating sources, and reorganizing our evidence regulations for ease of use.").

his pain.  (*See* AR 1574, 1630, 2115.)  However, Dr. Roomet later clarified that he did not intend his use of the term "pain behavior" to mean that Plaintiff was exaggerating his pain; rather, he "simply meant that [Plaintiff] showed signs of being in pain."[4]  (AR 2361.)  Similarly, treating licensed social worker, Michael Joyce, stated in an August 2014 treatment note that he "ha[s] always found [Plaintiff] to be an accurate reporter regarding his attempts to work within the system of care," and that "[Plaintiff] has never presented as dishonest or as if he is attempting to manipulate any system of care."  (AR 1339.)  Joyce, who had treated Plaintiff in therapy for almost two years at that time, stated that Plaintiff "presents as a young man [who] very much wants to be employed and participating in an engaged and meaningful lifestyle, but is unable to due to his health issues."[5]  (*Id.*)

When asked at the administrative hearing what evidence supports his opinion that Plaintiff is a malingerer, Dr. Fuchs cited only two records: a March 2013 treatment note wherein treating spine specialist Dr. Mary Flimlin recorded that Plaintiff "has a lot of pain behavior" (AR 1269), and Dr. Roomet's June 2017 treatment note discussed above wherein Dr. Roomet recorded the same (AR 2115). Two treatment notes in over an almost four-year span, taken from a record containing over 1,000 pages of medical notes, is inadequate to support the ALJ's

---

[4] After acknowledging Dr. Roomet's clarification of his statement about "pain behavior," the ALJ stated that he "d[id] not find Dr. Room[]et's explanation persuasive," given Dr. Fuchs's testimony on this issue and the fact that Dr. Roomet's clarification was offered "over one and one-half years after" Dr. Roomet examined Plaintiff.  (AR 1576.)  The Court finds the ALJ's rationale for not crediting Dr. Roomet's clarification *of his own opinion* unsupported for the reasons discussed throughout this Opinion and Order.

[5] Joyce renewed this opinion years later, after treating Plaintiff for over six years (*see* AR 2017), as discussed below.

13

decision to give great weight to this portion of Dr. Fuchs's opinion.  *See Meuser v. Colvin*, 838 F.3d 905, 912 (7th Cir. 2016) (improper for ALJ to "recite only the evidence that support[ed] his conclusion while ignoring contrary evidence"); *Smith v. Bowen*, 687 F. Supp. 902, 904 (S.D.N.Y. 1988) ("Although the ALJ is not required to reconcile every ambiguity and inconsistency of medical testimony, he cannot pick and choose evidence that supports a particular conclusion." (citation omitted)).  Moreover, nowhere in Dr. Flimlin's treatment note does she define what she meant by "pain behavior," nor does she state that she believed Plaintiff was exaggerating his pain (*see* AR 1269–70); and, as discussed above, Dr. Roomet's omission of that finding was intentional, as he in fact did *not* think Plaintiff was exaggerating his pain (*see* AR 2361).

The ALJ's adoption of Dr. Fuchs's opinions is especially problematic because not only did Dr. Fuchs believe Plaintiff exaggerated his pain, he explicitly disregarded any psychological component to Plaintiff's pain.  But the overwhelming evidence demonstrates that there are both objective physical causes for Plaintiff's pain, as well as a psychological component.  For example, regarding Plaintiff's physical limitations, in a September 2014 report, examining medical consultant Dr. Richard Morrison stated: "I could see where [Plaintiff] is quite limited due to the multiple problems he has with the structure of his body."  (AR 1343.)  And in an October 2012 treatment note, Dr. Flimlin opined that Plaintiff had a work capacity of "sedentary[,] limited to 4 to 6 hours a day," mainly due to his back and leg pain.  (AR 1266.)  Regarding the psychological component of Plaintiff's pain, as far back as

July 2006, a treating registered nurse diagnosed Plaintiff with "[p]ain disorder with psychological factors and medical condition." (AR 1026.) And in December 2012, nonexamining agency consultant Dr. Joseph Patalano found that Plaintiff "may have episodic problems with concentration/pace due to occasional increases in anxiety/depression associated with health and environmental stressors which temporarily undermine cognitive efficiency." (AR 116.) In September 2014, examining consultant Dr. Morrison diagnosed Plaintiff with chronic pain syndrome and depression. (AR 1342–43.) Likewise, in November 2018, treating primary care physician Dr. Daniel Donnelly opined that Plaintiff's depression affects his physical symptoms. (AR 2173.) Finally, in June 2019, after reviewing the record, psychologist Dr. Claiborn testified that Plaintiff "has [a] somatic symptom disorder" which encompasses Plaintiff's "anxiety or mood problems that are secondary primarily to his pain problem." (AR 1647.) The ALJ apparently at least partially agreed with this testimony from Dr. Claiborn, as he determined at step two of the sequential analysis that one of Plaintiff's severe impairments is "somatoform disorder." (AR 1562.)

Also problematic, the ALJ measured several other medical opinions against those of Dr. Fuchs, relying on Dr. Fuchs's opinions to the near exclusion of all others. (*See* AR 1575–77.) But almost every medical expert or provider who actually treated Plaintiff or reviewed his record from a psychological perspective, has opined that the combination of Plaintiff's psychological and physical impairments would significantly disrupt his ability to consistently maintain focus

and attendance at a job.  In particular, treating counselor Joyce, testifying expert

Dr. Claiborn, and treating physician Dr. Donnelly so opined, and the ALJ should

have given those opinions greater weight.

Regarding Joyce, the ALJ gave "less than great weight" to his opinions

because: (1) he is not an acceptable medical source, (2) his opinions are not

supported by his own treatment notes, and (3) his opinions are inconsistent with the

record including the opinions of the nonexamining agency consultants.  (AR 1578.)

Although these were proper factors for the ALJ to consider in evaluating Joyce's

opinions, *see* 20 C.F.R. §§ 404.1513(d), 416.913(d), 404.1527(c)(2)–(4), 416.927(c)(2)–

(4); SSR 06-03p, 2006 WL 2329939, at *2–3 (Aug. 9, 2006); *Genier v. Astrue*, 298 F.

App'x 105, 108 (2d Cir. 2008), the ALJ's second and third findings are not supported

by substantial evidence.  It is true, as the ALJ points out (AR 1578), that many of

Joyce's records do not indicate that Plaintiff was distractible or had poor

concentration, and in fact leave boxes designated for those limitations blank.  (*See,

e.g.*, AR 2193, 2196, 2199, 2202.)  But just as true, many of Joyce's records indicate

that Plaintiff *was* distractible or disoriented (*see, e.g.*, AR 2184, 2187, 2190, 2205);

and most importantly, the vast majority of Joyce's notes reveal that Plaintiff

consistently reported chronic pain, social isolation, and hopelessness/depression

(*see, e.g.*, AR 2191 ("struggling with anxieties related to his lack of mobility [and]

prospects that he will be able to live independently"; "continues to complain about

the right side of his body, restrictive movement[,] and ongoing pain"), AR 2200 ("did

not feel as if he could make efforts to connect with friends for supports, due to his

current feelings of anger/depression"), AR 2203 ("continues to struggle with mobility and pain with general movement"; "reports spending the majority of his day in bed, as movement is painful"; "displayed little interest in reaching out to his friends . . . or engaging in any social activities"; "consistently expresses regret when participating in physical activities (long car trips, sitting in uncomfortable chairs, walking) due to his need to recover (3–4 days) after"), AR 2212 ("discussed his depression in relation to his chronic pain"; "his depressive state can clearly be tracked to how much pain he is in and his overall outlook on life"), AR 2224 ("loss of mobility [and] chronic pain [a]ffect all aspects of [his] life"), AR 2290 ("appeared to be in significant pain walking from the waiting room to my office"; "noticed a significant increase in his irritability"), AR 2296 ("appeared to struggle walking into my office from the waiting room"; "winced in pain as he sat, reporting his r[igh]t leg was in pain, preventing him from sleeping"; "has not reached out to friends in the past two weeks, due to his 'irritability' and being in a 'constant bad mood'"; "has not been able to walk/stretch in the past two weeks, due to an increase in pain"), AR 2299 ("described a continuation in his irritability"; "reported ongoing pain on the r[igh]t side of his body and displayed frustration/anger that his prognosis for improved health seems to be diminishing"), AR 2305 ("appeared to be in a significant amount of pain, walking from the waiting from to my office"; "struggled to stay seated, needing to stand and pace several times"), AR 2308 ("continues to struggle with the impacts of chronic pain"; "had difficulty recognizing his strength in perseverance [and] persistence relating to his health issues"; "continues to

express hopelessness regarding his health improving"), AR 2317 ("increased his isolation, spending the majority of his time in his room, watching TV"; "identified an increase in his pain level, 8 [on a scale of 1–10] on his r[igh]t side"), AR 2323 ("described his feelings of loss [and] grief regarding his physical limitations and ongoing health issues"), AR 2326 ("continues to be in [c]hronic pain on his right side, . . . which has been consistent for the past several years"; "continues to struggle w[ith] consistent sleep"; "described depressive symptoms, withdrawing from social opportunities (friends), increased isolation, feelings of hopelessness regarding his situation"), AR 2353 ("continues to have minimal movement on his right side and chronic pain throughout his body"; "remains feeling 'hopeless' regarding his physical health [and] his ability to earn money and sustain a life that will be rewarding"), AR 2356 ("had difficulty walking from waiting room to my office, as evidenced by limping and grimacing in pain as he walked"; "has been spending the majority of his time either in bed, or attending appointments").

Consistent with these treatment notes, Joyce opined in a November 2018 Medical Source Statement—after providing individual therapy for Plaintiff approximately twice each month over a period of more than six years (AR 2016, 2018)—that Plaintiff met the diagnostic criteria for depressive disorder, chronic pain with depressive features, and generalized anxiety disorder.  (AR 2016.)  Joyce explained that, despite being engaged in treatment, Plaintiff "struggles daily with significant depression" and "has withdrawn from friends and family" (*id.*), largely due to "his current physical health condition (chronic pain)" (AR 2017).  Joyce

further opined that Plaintiff was markedly limited in his ability to concentrate, persist, or maintain pace, due to his mental health problems.  (AR 2019.)  And finally, Joyce opined that Plaintiff was likely to be off task about 10% of the time and would be absent from work four or more times each month due to his psychological symptoms.  (AR 2020.)  Although Joyce's opinions were not entitled to "controlling weight," given his status as an "other source" (a licensed social worker) rather than an "acceptable medical source" (e.g., a physician or licensed psychologist) under the regulations, *see* SSR 06-03p, 2006 WL 2329939, at *2–3; the ALJ should have given greater weight to Joyce's opinions, and less weight to Dr. Fuchs's, keeping in mind that: (1) Joyce treated Plaintiff on a consistent basis for over six years, *see* 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1) ("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you."); *id.* §§ 404.1527(c)(2)(i), 416.927(c)(2)(i) ("When [a] treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source."); and (2) the job of a medical adviser like Dr. Fuchs is "to explain complex medical problems in terms understandable to lay examiners," not to make opinions on claimants' ability to work, *Vargas v. Sullivan*, 898 F.2d 293, 295 (2d Cir. 1990).

Moreover, Joyce's treatment notes and opinions are consistent with those of other treating and consulting providers, including testifying psychological expert Dr. Claiborn.  At the third administrative hearing, Dr. Claiborn testified as follows:

- Plaintiff's ability to maintain CPP "I think rises to a marked level of impairment." (AR 1648.)

- "[T]he real problem here is that [Plaintiff] would not be likely to maintain [an eight-hour workday, 40-hour work week], because he's so in the pattern of spending almost all of his time in bed or leaving any situation where he's having more pain and going to bed." (*Id.*)

- "[Plaintiff's] daily schedule . . . is . . . intermittent periods of sleep . . . through the 24-hour period," with no "extended sleep period and then extended wake period," so "he's just never going to meet a regular schedule without a dramatic change in his symptom pattern." (*Id.*)

- "[I]f he showed up [to work,] he'd probably think he needed to leave because he was having some pain and something like that." (*Id.*)

- Plaintiff has "marked limitation" in CPP because "he would either not attend [work] or he would be essentially off task [for] substantial periods of time during the [work]day, because he is so preoccupied with the pain, and specifically not even . . . maintaining two-hour block[s] . . . of focus or concentrat[ion]." (AR 1649.)

- "[G]iven [Plaintiff's] pattern of behavior at this point[,] he would miss more than a day [of work] a month." (AR 1650.)

- [I]t's a "reasonable conclusion" that [Plaintiff] would be "off task at least 15% of the workday," "mainly due to the concentration, persistence, [and] pace issue." (*Id.*)

Of the two testifying medical experts, Dr. Claiborn, as a psychologist, is the more qualified on the subject of the combined impact of Plaintiff's chronic pain and his mental impairments. *See* 20 C.F.R. § 404.1527(c)(5), 416.927(c)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."). Yet the ALJ found Dr. Claiborn's opinions on this subject to be "less persuasive" than those of testifying medical expert Dr. Fuchs, an orthopedic surgeon. (AR 1577.) The ALJ justified his decision to give Dr. Claiborn's opinions "less than great weight" as follows: (1) Dr. Claiborn's opinions are inconsistent with the treatment history and objective evidence including Joyce's treatment notes; and (2) the opinions are unsupported by other mental health opinions, particularly with respect to Dr. Claiborn's opinion that Plaintiff had a somatoform disorder. (AR 1577–78.) Again, although the ALJ considered the proper regulatory factors in evaluating these opinions, substantial evidence does not support the ALJ's findings. Rather, Dr. Claiborn's opinions are supported by and consistent with virtually all the opinions in the record other than Dr. Fuchs's, including those of Plaintiff's primary care physician Dr. Donnelly, who opined in November 2018 that Plaintiff's chronic pain and depression would cause him to be off task for 20% or more each workday and to miss more than four days of work per month. (AR 2173, 2175.) The ALJ gave "little weight" to Dr. Donnelly's opinions, again, largely in reliance of Dr. Fuchs's opinions. (AR 1575.)

Given the ALJ's failure to properly evaluate the medical opinions, he erred in finding that Plaintiff has the RFC to sustain CPP for two-hour increments in an eight-hour workday and 40-hour workweek.  The ALJ's error was not harmless: once greater weight is afforded to the opinions of Joyce, Dr. Claiborn, and Dr. Donnelly, it is clear that Plaintiff would be unable to maintain a full-time job due to his deficiencies in maintaining CPP and consistently appearing for work. According to Joyce, Plaintiff would be off task about 10% of the time and would miss at least four days of work per month.  (AR 2020.)  In Dr. Claiborn's opinion, Plaintiff would be off task at least 15% of the time and would miss more than one day of work per month.  (AR 1650.)  And Dr. Donnelly agreed with Joyce that Plaintiff would miss at least four days of work per month and believed that Plaintiff would be off task at least 20% of the time.  (AR 2175.)  Each of these opinions supports a finding of disability, given the VE's testimony at the third administrative hearing that "being absent . . . more than one time [each month] would preclude work."[6] (AR 1656.)  Accordingly, Plaintiff's claim must be remanded.

## II.    The claim is remanded solely for calculation of benefits.

Plaintiff claims the Court should remand solely for calculation of benefits, rather than remanding for further proceedings and a new decision.  (Doc. 13 at 3, 9–10.)  Although the latter approach is usually preferred, in this case, the Court remands for calculation of benefits.

---

[6] The VE also testified that being off task for 15% of the workday "would be beyond the acceptable level."  (AR 1656.)

After reviewing the decision of the Commissioner, a court may, under 42 U.S.C. § 405(g), affirm, modify, or reverse the Commissioner's decision, with or without a remand for a rehearing or further explanation. When a court concludes that an ALJ's decision is not supported by substantial evidence, or fails to correctly apply relevant legal standards, reversal is appropriate, and remand for further proceedings may be the proper remedy. *See, e.g.*, *Snell v. Apfel*, 177 F.3d 128, 133, 136 (2d Cir. 1999) (citing *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998)). The Second Circuit has held that, when "the administrative record contains gaps" and "further development of the evidence is appropriate," courts generally remand the claim to the Commissioner for further administrative proceedings. *Butts*, 388 F.3d at 385. The court explained that, when "further findings would so plainly help to assure the proper disposition of [the] claim," remand for further proceedings and a new decision is appropriate. *Id.* (internal quotation marks omitted).

On the other hand, when the court finds "no apparent basis to conclude that a more complete record might support the Commissioner's decision," *Rosa v. Callahan*, 168 F.3d 72, 83 (2d Cir. 1999), and there exists "substantial evidence in the record that the claimant was is fact disabled," *Bush v. Shalala*, 94 F.3d 40, 46 (2d Cir. 1996) (citing *Kelly v. R.R. Ret. Bd.*, 625 F.2d 486, 491 (3d Cir. 1980)), courts have opted to remand solely for a calculation of benefits. *See, e.g.*, *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003) (remanding for calculation of benefits where VE testified that, under the limitations assessed by treating physician, plaintiff could not be employed)*; Balsamo v. Chater*, 142 F.3d 75, 82 (2d Cir. 1998)

(holding court may direct Commissioner to award benefits when record has been fully developed and substantial evidence indicates claimant is entitled to benefits); *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 644 (2d Cir. 1983) ("[W]hen . . . the reversal is based solely on the [Commissioner's] failure to sustain his burden of adducing evidence of the claimant's capability of gainful employment and the [Commissioner's] finding that the claimant can . . . work is not supported by substantial evidence, no purpose would be served by our remanding the case for rehearing unless the [Commissioner] could offer additional evidence."); *Butts*, 388 F.3d at 385–86 ("[W]here this Court has had no apparent basis to conclude that a more complete record might support the Commissioner's decision, we have opted simply to remand for a calculation of benefits."); *Chadirjian v. Berryhill*, No. 17-CV-1476 (CBA), 2019 WL 518542, at *11 (E.D.N.Y. Feb. 11, 2019) ("Because the Court concludes that a remand for further evidentiary hearings would serve no purpose, the Court reverses the Commissioner's decision and remands solely for calculation and payment of benefits." (citation omitted)); *Mackey v. Barnhart*, 306 F. Supp. 2d 337, 344 (E.D.N.Y. 2005) (remanding solely for calculation of benefits where two treating doctors, supported by significant additional medical evidence, found plaintiff's impairments totally disabling, and there was insufficient evidence to support Commissioner's rejection of their opinions).

Here, remand for further proceedings would not be useful because substantial evidence indicates that Plaintiff is disabled; the record is complete; and there is no indication that other relevant evidence exists. Also noteworthy, Plaintiff filed the

pending claim in February 2014, over six years ago.  Since then, he has had three administrative hearings, two ALJ decisions, and one District Court order remanding for further proceedings and a new decision.  Although the length of time that a claim has been pending is not a sufficient basis in and of itself to reverse and award benefits, *see Giddings v. Astrue*, 333 F. App'x 649, 655 (2d Cir. 2009)[7], here, substantial evidence indicates that Plaintiff was disabled during the alleged disability period.  As discussed above, the ALJ should have given greater weight to the opinions of treating providers Joyce and Dr. Donnelly and testifying psychological expert Dr. Claiborn, and less weight to the opinions of testifying medical expert Dr. Fuchs.  Had he done so, it is clear that he would have found, based on the VE's testimony and other substantial evidence in the record, that Plaintiff would not have been able to perform any work.  Thus, considering "the often painfully slow process by which disability determinations are made," *Carroll*, 705 F.2d at 644, and that no purpose would be served by remanding for further proceedings, remand for calculation of benefits is the more appropriate remedy.  *See Balsamo*, 142 F.3d at 82 (noting that claimant filed for disability benefits "more than four years ago").

## Conclusion

The Court finds that Dr. Fuchs's testimonial opinions do not constitute substantial evidence to support the denial of disability benefits, and the ALJ should not have afforded great weight to those opinions.  Moreover, the overwhelming

---

[7] *See also Bush*, 94 F.3d at 46 ("absent a finding that the claimant was actually disabled, delay alone is an insufficient basis on which to remand for benefits").

weight of the evidence—including the opinions and treatment records of treating counselor Joyce and treating physician Dr. Donnelly, and the testimonial opinions of psychological expert Dr. Claiborn—establishes that Plaintiff was disabled during the alleged disability period.  For these reasons, the Court GRANTS Plaintiff's motion (Doc. 13), DENIES the Commissioner's motion (Doc. 14), and REMANDS solely for calculation of benefits.

      Dated at Burlington, in the District of Vermont, this 22nd day of October 2020.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge